Mark T. Domeyer, Esq.
California Bar No. 135008
MILES, BAUER, BERGSTROM & WINTERS, LLP
1665 Scenic Ave., Suite 200
Costa Mesa, CA  92626
(714) 481-9100 / FAX (714) 481-9144
File No. 07-68607

Attorneys for Movant,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")

# UNITED STATES BANKRUPTCY COURT
## Southern District of California

| | |
|---|---|
| In re: | Case No.: 07-06558-JH7 |
| DOROTHY A. GIACALONE, | Chapter 7 |
| Debtor. | R.S. No. M&B1 |
| | |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), its assignees and/or successors in interest, | |
| Movant, | |
| v. | |
| DOROTHY A. GIACALONE, Debtor; NANCY WOLF, Trustee; | |
| Respondents. | |

### DECLARATION OF MARK T. DOMEYER IN SUPPORT OF ENTRY OF ORDER ON MOTION RELIEF FROM AUTOMATIC STAY

I, Mark T. Domeyer declare and state as follows:

1. I am an associate attorney employed by Miles, Bauer, Bergstrom & Winters., LLP., Counsel of record for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), hereinafter "Movant," and familiar with the subject first Trust Deed loan in favor of

1

1 | Movant herein and the ongoing Bankruptcy litigation herein.  I make this Declaration based upon
2 | the information contained in the records and documents that are already in evidence with the
3 | original motion.  I have personally reviewed the documents and which information I find such
4 | records and documents reflect.  If called upon as a witness, I would competently testify to the
5 | facts stated herein.
6 | 2. I submit this declaration regarding Movant's standing to bring the motion because in a
7 | similar case the Court did not approve the Order on Non-Contested Motion because the Court
8 | indicated that the Movant failed to submit evidence it was entitled to bring the motion, or lacked
9 | standing to bring the motion.
10 | 3. I submit this declaration to clarify the inconsistencies in the original declaration filed
11 | in support of the motion.  The papers filed in support of the original motion incorrectly
12 | identified the Movant as both the holder of the note and the beneficiary of the mortgage.  MERS
13 | is not the holder of the note, but it is the beneficiary of the deed of trust and is entitled to enforce
14 | the deed of trust as nominee when the payment obligations to the holder are breached.  Attached
15 | hereto as **Exhibit "1"** is a brief excerpt from MERS concerning its function as the beneficiary of
16 | mortgages and deeds of trust on behalf of its principals, the note holders.    Attached hereto as
17 | **Exhibit "2"** is a Primer on MERS that explains its function in laypersons' terms.   See also, In
18 | Re Huggins, 357 B.R. 180 (Bankr. D. Mass. 2006), collecting cases that summarize the MERS
19 | function as follows:

> MERS administers an electronic registry to track the transfer of ownership interests and servicing rights in mortgage loans, serving as mortgagee of record [or beneficiary under a deed of trust] and holding legal title to mortgages [or deeds of trust] in a nominee capacity.

Huggins 357 B.R. at 183 (citations omitted).

4. The deed of trust in evidence with the Motion establishes the duality of the holder of
the note and MERS as the beneficiary of the deed of trust, in its capacity as nominee for the

2

1 holder. Paragraph E of the definitions of the Deed of Trust establishes MERS' separate status as

2 beneficiary and nominee.

3     5. Second, the Debtor pledged the security interest in the collateral to MERS.

4 Specifically, the paragraph entitled "TRANSFER OF RIGHTS IN THE PROPERTY" provides:

> The beneficiary of this Security Instrument is MERS (solely as nominee for [American Mortgage Network, Inc.] Lender and Lender's successors and assigns) and the successor and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with the power of sale, the following described property . . . "

Deed of Trust, at page 3. Debtor knew that it was pledging its interest in trust to be enforced by MERS on default.

    6. A clear majority of the Courts that have considered the issue of MERS standing to prosecute foreclosure actions have concluded that MERS does have such standing. <u>MERS v. Reveredo</u>, 955 S.2d 33, 32 Fla. L Weekly D707 (Fla. App., 3 Dist. 2007); <u>In Re Huggins</u>, 357 B.R. 180 (Bankr. D. Mass. 2006).

    I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

    Executed this __24th__ day of __December__, 2007, at Costa Mesa, California.

                       /s/ Mark T. Domeyer
                       Mark T. Domeyer

3

**PROOF OF SERVICE**

I, __Miho Ishida_____, declare and state as follows:

1. I am a resident of Orange County, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 1665 Scenic Ave., Suite 200, Costa Mesa, California 92626.

2. On __January 4, 2008_____, I served the within **DECLARATION OF MARK T. DOMEYER IN SUPPORT OF ENTRY OF ORDER ON MOTION RELIEF FROM AUTOMATIC STAY WITH EXHIBITS AND A PROPOSED ORDER** on all interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope with postage pre-paid in the United States Mail at Costa Mesa, California, addressed as follows:

DEBTOR:
Dorothy A. Giacalone
POB 87427
San Diego, CA 92138

JUNIOR LIENHOLDER:
Flippo & Rosalie Battaglia
1118 Bangor Street
San Diego, CA 92106

JUNIOR LIENHOLDER:
Countrywide Bank
P.O. Box 10287
Van Nuys, CA 91410

ATTORNEY FOR DEBTOR:
Jeffery S. Styers
Law Offices of Jeffery S. Styers
225 E. Third Avenue
Escondido, CA 92025

CHAPTER 7 TRUSTEE:
Nancy Wolf
P.O. Box 420448
San Diego, CA 92142

U.S. TRUSTEE:
402 West Broadway, Suite 600
San Diego, CA 92101-8511

I certify that I am employed in the office of a member of the Bar at whose direction this service was given.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __January 4, 2008_____, at Costa Mesa, California.

__/s/ Miho Ishida_____

4



Home Page | Contact Us | Location | Privacy Policy | Site Map

Newsroom | About Us | Events | Why MERS? | Knowledge Base | Careers

Tools & Services
Downloads
Member Directory
Foreclosures
Enhancements
Forum
Advertising
Payment Options
MERS for Homeowners
Contact Us

Join Now — Become a Member

Home » About Us > Overview

## About MERS

**MERS was created by the mortgage banking industry to streamline the mortgage process by using electronic commerce to eliminate paper. Our mission is to register every mortgage loan in the United States on the MERS® System.**

Beneficiaries of MERS include mortgage originators, servicers, warehouse lenders, wholesale lenders, retail lenders, document custodians, settlement agents, title companies, insurers, investors, county recorders and consumers.

MERS acts as nominee in the county land records for the lender and servicer. Any loan registered on the MERS® System is inoculated against future assignments because MERS remains the nominal mortgagee no matter how many times servicing is traded. MERS as original mortgagee (MOM) is approved by Fannie Mae, Freddie Mac, Ginnie Mae, FHA and VA, California and Utah Housing Finance Agencies, as well as all of the major Wall Street rating agencies.

TOP

Home Page | Contact Us | Location | Privacy Policy | Site Map

Copyright© 2007 by MERSCORP, Inc. 1-800-646-MERS (6377)
Other products or company names are or may be trademarks or registered trademarks and are the property of their respective holders.



EXHIBIT 1



Home Page | Contact Us | Location | Privacy Policy | Site Map

Search

**Tools & Services**

MERS Products ›   MERS System   MERS Link   MERS 1-2-3   MERS Commercial

MERS eRegistry   MERS eDelivery   MERS ServicerID   MERS InvestorID

Downloads
Member Directory
Foreclosures
Enhancements
Forum
Advertising
Payment Options
MERS for Homeowners
Contact Us

Home » Forum Categories › View Forum Topics › Can someone explain MERS in Laymans terms?

Post A New Message                                   Read Forum Instructions

**Join Now Become a Member**

| RobVG | **Can someone explain MERS in Laymans terms?** I'm in a related industry and need a general idea of how MERS works. How is the MERS MIN number generated and is the organization ID assigned by MERS? Thanks for any help | November 25, 2003 03:37 PM |
| Per David Green | **Re: Can someone explain MERS in Laymans terms?** | February 5, 2004 03:43 PM |

A Primer on MERS Mortgage Electronic Registration Systems, Inc.

MERS is a mortgage industry owned for-profit company. Its shareholders include several large mortgage banking companies, Fannie Mae, Freddie Mac, the American Land Title Association and the Mortgage Bankers Association of America. It was incorporated in 1995 after the mortgage industry studied and recognized the advantage of establishing an electronic tracking system to eliminate Assignments as mortgage servicing rights are transferred from one servicer to another. The basic concept is that MERS will be the mortgagee of record for all mortgages registered with the company, and MERS® System will track the current servicer of the loan as well as the beneficial owner of the Note. Then, when servicing is transferred from one MERS member to another MERS member via a purchase and sale agreement (a contractual non-recordable event), no Assignment of record is needed because MERS remains the mortgage lien holder. The older servicer initiates the change of status with MERS, and the new servicer confirms the

EXHIBIT 2

6

change.

Initially, members originated loans in their own names, then immediately assigned the mortgage lien to MERS. While this method is still used for seasoned loans or when non-MERS members originate loans, a more streamlined method was developed in 1998 and approved by Fannie Mae and Freddie Mac, as well as Ginnie Mae (on FHA and VA loans). This method is known as "MOM" (MERS as Original Mortgagee). It involves the Borrower appointing MERS as the original mortgagee or beneficiary on the Mortgage or Deed of Trust security instrument. The Lender is also named and defined as the entity loaning the money to the Borrower.

Although it got off to a slow start, MERS has become a great success. As of the end of 2002, MERS had registered 12 million loans, and it continues to register about 24,000 new loans every business day. About half of all new mortgage loans originated in the United States are now registered with MERS. More than 1,000 mortgage banking companies are MERS members and originate loans registered with MERS.

How Does MERS Work?

When a MERS member originates a new mortgage loan, it has two options. It can either originate the loan in its own name and assign the mortgage to MERS or originate the loan in the name of MERS as original mortgagee. Special mortgage and deed of trust forms set forth the precise nature of MERS and the capacity in which it is the mortgagee. Both Fannie Mae and Freddie Mac have special "MERS" forms for use by MERS members. You can view them at http://www.freddiemac.com/uniform/mers.

For example, the Uniform Security Instrument MERS mortgage form for use in mortgage states (such as Illinois, Florida, Ohio and Pennsylvania) includes a special definition: "MERS' is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender''s successors and assigns."

MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679- MERS."

Then, in the "Transfer of Rights in the Property" section, the uniform Mortgage provides, "This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower''s covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower

7

EXHIBIT 2

does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property . . . Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

In the uniform Fannie/Freddie MERS Deed of Trust form for use in Deed of Trust states (such as California, Texas, and Washington), there is a definition of MERS similar to the one in the uniform Mortgage, except that MERS is described as the beneficiary under the Security Instrument, not the mortgagee. The uniform Deed of Trust then provides, "The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

Mortgages and Deeds of Trust naming MERS as the original mortgagee, or Assignments into MERS, are accepted for recordation in the appropriate county or land records offices in all 50 states and the District of Columbia, Guam, Puerto Rico, and the U.S. Virgin Islands. At first, some recorders of deeds—notably the recorder of deeds for Suffolk County, New York— refused to accept MERS mortgages for recordation, claiming the mortgages failed to name the actual mortgagee. MERS sued the Suffolk County recorder of deeds to force him to accept MERS mortgages for recordation. There currently is a Court Order issued by the New York Appellate Division, Second Department ordering that the Clerk record all MERS documents. The case is scheduled for Summary Judgment hearing in May 2003. Merscorp, Inc. v. Edward P. Romaine, et al., Case No. 2001-04792 (N.Y. App. Div., 2nd Jud. Dept., 6/10/02) is available online at www.mersinc.org under "Publications" and then the "Press Releases" link.

It is important to remember the distinction between registering a loan with MERS and recording a security instrument with the county recorder's office. Perfection of the lien on the property is effective only by recording the security instrument with the county recorder's office. Unless there is a mortgage or deed

EXHIBIT 2

of trust on file with the county recorder's office, MERS will not be the mortgagee of record. By contrast, registration with MERS is required to enable MERS to track the loan; registration alone does not put MERS in position as mortgagee of record.

Once MERS is mortgagee of record, the chain of title is complete. Subsequent transfers of the servicing from one servicer to another or one promissory noteowner to another beneficial owner (via an endorsement and delivery of the promissory note), do not require Assignments because the mortgage lien does not change hands with these transfers. These transfers also do not affect the status of title. Such transfers are tracked electronically on the MERS System.

What are the Benefits of MERS?

MERS provides two primary benefits to its members: it reduces cost and eliminates lost assignments. Since most loans are sold into the secondary market and serviced by large servicers, without MERS, every loan would have at least one Assignment of record after the initial recordation of the security instrument. Some loans change servicing hands as many as five times before the loan is paid off. Before MERS, that required five assignments because each time the new servicer needed to appear in the land records to receive service of process on behalf of the promissory note owner. The cost of an Assignment can be $12 to $25, depending upon the recorder's office.

The cost of registering a loan with MERS, by contrast, is just $3.95 per loan. Subsequent servicing transfers do not have to be recorded via Assignment because the loan remains with MERS; instead, the MERS System tracks the changes for just $8.50 per loan. MERS estimates that mortgage lenders save an average of $22 per loan by using MERS. For a good-sized lender originating tens of thousands of loans per year, the savings can be substantial.

Perhaps just as important is the elimination of lost assignment and broken chains of title as a risk for the lender. Without MERS, each transfer of servicing had to be documented by an Assignment of record. Every lender has experienced the situation in which a loan has paid in full, but the present servicer cannot release the lien on the borrower's property because of a missing assignment (usually from the originator to a prior servicer). This results in delayed, or even impossible, releases, and thus statutory penalties and occasionally actual damages.

Without MERS, foreclosure proceedings are often delayed because of missing links in the chain of title. If the current servicer is not the mortgagee of record because of a missing Assignment, that company may be barred from prosecuting a foreclosure action in

EXHIBIT 2

judicial states or executing a substitution of trustee in nonjudicial states. These delays and hindrances are eliminated when security instruments are recorded in the name of MERS.

How do you Foreclose on MERS Loans?

MERS has published on its website foreclosure guidelines for all 50 states. In general, a MERS loan is foreclosed in the same manner as any other loan, with MERS being treated just like the servicer of the loan. In judicial foreclosure states, that means naming MERS as the plaintiff in the foreclosure action (provided MERS is the mortgagee of record in the public records). In the body of the Complaint, MERS can be identified as the mortgagee and holder of the Note on behalf of the beneficial owner of the Note. In virtually all cases, employees of the servicer have been designated as "certifying officers" of MERS for the limited purpose of executing documents needed during the course of the foreclosure (affidavit of debt, deed in lieu, assignment of bid, etc.).

For instance, in Illinois, the foreclosure is prosecuted in the name of MERS, which is identified in the body of the Complaint as the mortgagee of record and holder of the Note, as nominee for the beneficial owner of the Note. The affidavit in support of the motion for judgment (either default or summary judgment) is executed by an employee of the servicer in his/her capacity as an officer of MERS. At sale, the bid is entered on behalf of MERS. If MERS is the successful bidder, then the Certificate of Sale is assigned to the investor or servicer, depending upon the investor's requirements. When the foreclosure sale is confirmed, the title to the property will be in the name of the investor or servicer.

In non-judicial states, MERS is treated like the servicer; MERS is the beneficiary of the Deed of Trust. An employee of the servicer, in his/her capacity as an officer of MERS, will execute the substitution of trustee to the designated trustee or trustee company. The trustee then posts or records the Notice of Default and Notice of Sale, as usual. MERS bids at the Trustee''s sale, and if the property reverts, the Trustee's Deed upon Sale will name the true beneficiary—either the investor or the servicer, depending upon the investor's requirements. Procedures may differ in different states, and consultation with the MERS foreclosure guidelines and/or with MERS'' local counsel is encouraged.

There have been some challenges to the ability of MERS to be the named plaintiff in a judicial foreclosure action. We are presently aware of two challenges in the trial courts in Illinois and Oklahoma. The position of the borrowers in these cases is that a foreclosure action must be brought in the name of the real party in interest, and that MERS is not the real party in interest. So far, neither case has progressed to the

EXHIBIT 2

point of a judicial decision. If foreclosure counsel in other jurisdictions become aware of similar challenges, it is important to inform Sharon Horstkamp, the Corporate Counsel of MERS, at (703) 761-1280 or sharonh@mersinc.org.

MERS is clearly the wave of the future. A greater percentage of foreclosures will involve MERS as time goes on, and it is important to understand this central player in the mortgage industry. If there are any questions, please don't hesitate to contact the author, David K. Greene, assistant general counsel of LOGS, at (847) 291-9100, ext. 114 or davidg.hq@logs.com.

RobVG wrote:
I''m in a related industry and need a general idea of how MERS works. How is the MERS MIN number generated and is the organization ID assigned by MERS? Thanks for any help

| Dan McLaughlin | Re:Can someone explain MERS in Laymans terms? | November 26, 2003 03:45 PM |

Rob:

The MIN is an 18-digit number that is comprised of three components:

First 7 digits = MERS Org ID
Next 10 digits = Member assigned
Last 1 digit = Computer-generated Check digit

Our members generate these numbers themselves using a MIN generation computer program.

MERS assigns each of its members a unique 7-digit ORG ID. The member begins the MINs that it generates with their ORG ID.

For more detailed information about MIN generation, please reference the Integration Handbook Volume II from the Manuals and Forms menu item of this web site.

Thanks for your question.

Dan

RobVG wrote:
I''m in a related industry and need a general idea of how MERS works. How is the MERS MIN number generated and is the organization ID assigned by MERS? Thanks for any help

| RobVG | Re:Re:Can someone explain MERS in Laymans terms? | November 26, 2003 03:46 PM |

11

EXHIBIT 2

Thanks, that was a big help! (nt)

**Dan McLaughlin wrote:**

Rob:

The MIN is an 18-digit number that is comprised of three components:

First 7 digits = MERS Org ID
Next 10 digits = Member assigned
Last 1 digit = Computer-generated Check digit

Our members generate these numbers themselves using a MIN generation computer program.

MERS assigns each of its members a unique 7-digit ORG ID. The member begins the MINs that it generates with their ORG ID.

For more detailed information about MIN generation, please reference the Integration Handbook Volume II from the Manuals and Forms menu item of this web site.

Thanks for your question.

Dan

**RobVG wrote:**
I'm in a related industry and need a general idea of how MERS works. How is the MERS MIN number generated and is the organization ID assigned by MERS? Thanks for any help

First  Prev  1 Next  Last

Total Pages: 1

Display threads for:
All Days

TOP

EXHIBIT 2

Copyright© 2007 by MERSCORP, Inc. 1-800-646-MERS (6377)
Other products or company names are or may be trademarks or registered trademarks and are the property of their respective holders.

EXHIBIT 2